UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MICHAEL ADAMS,

      Plaintiff,

   -against-

GIGA GREENPOINT REALTY LLC, *et al.*,

      Defendants.
----------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
24 CV 5581 (RPK) (CLP)

**POLLAK**, United States Magistrate Judge:

On August 9, 2024, plaintiff Michael Adams commenced this action against defendants

Giga Greenpoint Realty LLC and O B Hospitality Inc. (collectively, "defendants"), alleging that

defendants violated Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §

12181, *et seq.*, and the ADA's Accessibility Guidelines ("ADAAG"), 28 C.F.R. Part 36, by

failing to provide facilities that were accessible to plaintiff, who uses a wheelchair as a result of

his disability.  (See Compl.[1]).

Currently pending before this Court on referral from the Honorable Rachel P. Kovner,

United States District Judge, is plaintiff's motion for default judgment.  (See Pl.'s Mem.[2]).  For

the reasons set forth below, the Court respectfully recommends that plaintiff's motion be denied.

FACTUAL BACKGROUND

Plaintiff resides in Brooklyn, New York.  (Compl. ¶ 2).  Born with cerebral palsy,

plaintiff is bound to ambulate in a wheelchair.  (Id.)  Defendant Giga Greenpoint Realty LLC is

alleged to be the owner of the real property which is the subject of this action, located at 84

Havemeyer Street, Brooklyn, New York 11211 ("Subject Property").  (Id. ¶ 3).  Plaintiff alleges

---

[1] Citations to "Compl." refer to the Complaint, filed August 9, 2024 (ECF No. 1).
[2] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Support of Motion for Final Default Judgment, filed January 7, 2025 (ECF No. 14).

that defendant O B Hospitality Inc. is the operator of the business known as OH BOY, a restaurant located at the Subject Property.  (Id. ¶ 4).  Plaintiff further alleges that the Subject Property is "a public accommodation and service establishment" that, "although required by law to do so, . . . is not in compliance with the ADA and ADAAG."  (Id. ¶ 7).

Plaintiff states that, on two occasions, he "visited the Subject Property" and that, "on both of these occasions, [his] ability to ambulate through the entrance of the Subject Property was constrained, hindered, and thwarted by . . . structural barriers, . . . which prevented access to the public accommodation."  (Id. ¶ 5).  Consequently, plaintiff alleges that defendants have discriminated against him and others with disabilities by denying access to and full and equal enjoyment of the Subject Property's goods and services, in violation of 42 U.S.C. § 12182, *et seq.*, and "by failing to remove architectural barriers" at the Subject Property, in violation of 42 U.S.C. § 12182(b)(2)(A)(iv).  (Id. ¶ 14).  Plaintiff lists thirty-six separate violations but notes that an inspection is required to determine all of the ADA violations.  (Id. ¶¶ 15–16).

Plaintiff argues that "he has suffered and continues to suffer direct and indirect injury as a result of the ADA violations that exist" at the Subject Property.  (Id. ¶ 8).  He alleges that he lives several miles from the Subject Property and that he passes by the defendants' restaurant when he is "doing errands, visiting family and friends throughout the borough, and looking to eat out."  (Id. ¶ 6).  In fact, plaintiff claims that the Subject Property is in a neighborhood where he dines out between two and three times per month and that he has dined at restaurants located on the same street about once or twice per month.  (Id.)  Plaintiff further alleges that he intends to visit the Subject Property again in the near future, especially in the coming summer and autumn, when dining out in this neighborhood with friends, but will be unable to do so due to the various violations.  (Id. ¶¶ 7, 9).

2

Plaintiff asserts that the removal of the various barriers and other ADA violations is "readily achievable and can be accomplished and carried out without much difficulty or expense." (Id. ¶ 17). Unless and until defendants are required to remove the physical barriers, dangerous conditions, and ADA violations that exist at the Subject Property, plaintiff claims that he will continue to suffer irreparable harm. (Id. ¶ 18). Moreover, plaintiff asserts that he is entitled to injunctive relief, including an order to alter the Subject Property to make it readily accessible and ADA-compliant and to close the Subject Property until the requisite modifications are completed; in addition, he seeks an award of reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. §§ 12205 and 12217. (Id. ¶¶ 19–20).

## PROCEDURAL BACKGROUND

Following the filing of the Complaint on August 9, 2024, the summons and Complaint were served on defendants on August 20, 2024.[3] (See ECF Nos. 6–7). When defendants failed to file an Answer or otherwise respond within the required time period, plaintiff requested that a Certificate of Default be entered against the defendants on December 13, 2024. (ECF Nos. 9–10). Thereafter, the Clerk of Court entered a Certificate of Default against defendants on December 17, 2024. (ECF Nos. 11–12). On January 7, 2025, plaintiff filed the instant motion for default judgment, accompanied by an Affidavit from his counsel, a Memorandum of Law in support of the motion, a proposed final judgment, a copy of the Complaint, and a certificate of service. (ECF No. 13; Pl.'s Mem.). On January 8, 2025, the Honorable Rachel P. Kovner referred plaintiff's motion for default judgment to the undersigned for a Report and Recommendation. (Electronic Order, dated Jan. 8, 2025). On June 2, 2025, plaintiff filed a

---

[3] Both defendants were served by way of the New York Secretary of State, an authorized agent for service of process. (ECF Nos. 6, 7); see Fed. R. Civ. P. 4(h)(1)(B) (permitting service on authorized agents); N.Y. Bus. Corp. Law § 306(b)(1)(i) (establishing the Secretary of State as an authorized agent and providing that "[s]ervice of process on such corporation shall be complete when the secretary of state is so served").

supplemental certificate of service confirming that the Clerk's Certificates of Default had been served.  (ECF No. 15).  Defendants did not respond to plaintiff's motion.

## DISCUSSION

I.    Default and Default Judgment Standard

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Rule 55 sets forth a two-step process for an entry of default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993).  First, the Clerk of the Court automatically enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  See id.  Second, after the Clerk of the Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter default judgment.  See Fed. R. Civ. P. 55(c).

However, in determining whether a default judgment should be entered, the Second Circuit has cautioned that a default judgment is an extreme remedy that "must remain a weapon of last, rather than first, resort."  Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id. Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because the defendants are in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162

4

(S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The court has significant discretion and may consider a number of factors in deciding whether to grant a default judgment.  These factors include:  (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendant on notice; and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment.  See Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992); Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); King v. STL Consulting LLC, No. 05 CV 2719, 2006 WL 3335115, at *4–5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages).  Additionally, a court may consider whether the facts alleged in the complaint state a valid cause of action, whether there are unresolved questions regarding material issues of fact as to liability or damages, whether plaintiff has been substantially prejudiced by the delay involved, and how harsh an effect a default judgment might have on the defendant.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981) (discussing factors); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2685 (4th ed.).

A party defaults when it "has failed to plead or otherwise defend" the case.  Fed. R. Civ. P. 55(a).  The Second Circuit has "embraced a broad understanding of the phrase 'otherwise defend.'"  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 129 (2d Cir. 2011) (citation omitted).  Indeed, a defendant may fail to defend by "failing to appear for a deposition,

dismissing counsel, giving vague and unresponsive answers to interrogatories, and failing to appear for trial," Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65, or by failing to comply with discovery orders or failing to appear for trial.  Guggenheim Cap., LLC v. Birnbaum, 722 F.3d 444, 454 (2d Cir. 2013) (citing Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 917-19 (3d Cir. 1992)).  However, the "typical Rule 55 case is one in which a default has entered because a defendant failed to file a timely answer."  City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d at 129 (alterations and internal quotation marks omitted).

Here, it is beyond dispute that defendants are in default.  Defendants have not responded to the Complaint, nor have defendants even appeared in this action at all.  Moreover, despite proper service, defendants have not only failed to file an Answer or otherwise move with respect to the Complaint, but defendants have also failed to respond to plaintiff's motion for a default judgment.  See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion").  Thus, plaintiff's evidence on liability and relief is undisputed.

II.    Entry of Default Judgment – Liability for Damages Alleged in the Complaint

Plaintiff has alleged claims under Title III of the ADA, under which a plaintiff must "establish that (1) he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that the defendants discriminated against the plaintiff within the meaning of the ADA."  Roberts v. Royal Atl. Corp., 542 F.3d 363, 368 (2d Cir. 2008), cert. denied, 129 S. Ct. 1581 (2009); see also Makhnevich v. Bougopoulos, No. 21 CV 5516, 2023 WL 197297, at *13 (E.D.N.Y. Jan. 15, 2023).

Here, plaintiff has alleged the three necessary prongs.  First, plaintiff alleges that he is disabled within the meaning of the ADA because he has cerebral palsy and is wheelchair-bound. (Compl. ¶ 2); see Rutledge v. Haru Inc., No. 20 CV 7461, 2021 WL 4429328, at *1 (S.D.N.Y.

6

Sept. 27, 2021) (finding similar allegations about wheelchair use by a plaintiff sufficient to allege the first prong of ADA liability (citing 28 C.F.R. § 36.105(d)(2)(iii)(D))); see also Adams v. 724 Franklin Ave. Corp., No. 16 CV 5138, 2016 WL 7495804, at *3 (E.D.N.Y. Dec. 30, 2016) (same).  Second, plaintiff alleges that defendants own or operate the Subject Property, a restaurant, which is a place of public accommodation.  (Compl. ¶¶ 3–4, 7); see Rutledge v. Haru Inc., 2021 WL 4429328, at *1 (citing 42 U.S.C. § 12181(7)(B), which includes in its definition of public accommodation "a restaurant, bar, or other establishment serving food or drink").

As to the third prong, plaintiff alleges violations of the ADA, including architectural barriers, that make it difficult for plaintiff to access the Subject Property.  (See Compl. ¶¶ 5, 15–16).  More specifically, plaintiff alleges numerous violations of the ADAAG, including but not limited to:  an inaccessible entrance; the lack of a ramp for a step at the entrance; insufficient maneuvering clearance at various doors; and an inaccessible exterior dining compartment.  (Id. ¶ 15).  Courts have held that "[a] plaintiff can establish discrimination in violation of the ADA by showing that the defendant violated the applicable accessibility standards set forth in the ADA Accessibility Guidelines."  Harty v. Spring Valley Marketplace LLC, No. 15 CV 8190, 2017 WL 108062, at *5 (S.D.N.Y. Jan. 9, 2017) (internal quotation marks and citation omitted). Moreover, plaintiff alleges that due to these violations, he could not access the Subject Property "without severe hardship," "will continue to suffer irreparable harm," and "will be unable" to visit the Subject Property again in the near future.  (Id. ¶¶ 11, 13, 18).  Plaintiff alleges that the removal of such barriers, dangerous conditions, and ADA violations is "readily achievable and can be accomplished and carried out without much difficulty or expense."  (Id. ¶ 17).  As a result, plaintiff alleges that he has been discriminated against in violation of the ADA.  (Id. ¶ 14). See 42 U.S.C. § 12182(b)(2)(A)(iv) (defining discrimination to include "a failure to remove

architectural barriers . . . in existing facilities . . . where such removal is readily achievable"). Thus, plaintiff has more than satisfied the requirements for stating a claim of discrimination under the ADA.

Given that the factual allegations in the Complaint are deemed true for the purposes of a default judgment, see Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65, the Complaint meets "all the necessary elements of a claim under the ADA." Adams v. 724 Franklin Ave. Corp., 2016 WL 7495804, at *3 (finding that nearly identical allegations in another ADA case filed by this plaintiff were sufficient to state a claim under the ADA). Accordingly, if these were the Court's only considerations, it would respectfully recommend that a default judgment be entered in favor of plaintiff. However, as explained below, the Court instead respectfully recommends that plaintiff's motion for default judgment be denied for lack of standing.

III.    Damages

A.    Legal Standard

When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations of liability. See Bricklayers & Allied Craftworkers Local 2 v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 189 (2d Cir. 2015) (per curiam). However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendants can contest the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993).

Under Title III of the ADA, the sole available remedy is "injunctive relief to compel architectural compliance" and discretionary attorney's fees. See Taylor v. 312 Grand St. LLC, No. 15 CV 5410, 2016 WL 1122027, at *3 (E.D.N.Y. Mar. 22, 2016) (citing 42 U.S.C. §§ 12188(a); 12182(b)(2)(A)(iv)). Here, plaintiff seeks an injunction and attorney's fees and costs; he does not seek monetary damages. (Pl.'s Mem. at 5; Compl. ¶¶ 19–20). As to attorney's fees,

costs, and injunctive relief, the Court finds that a hearing is unnecessary at this time. Nevertheless, for the reasons set forth below, the Court respectfully recommends denying plaintiff's request for relief due to a lack of standing.

### B.    Injunctive Relief

Prior to issuing injunctive relief and awarding fees, courts must evaluate whether a plaintiff has standing to bring an action, even if the defendants are in default.  Hashimi v. CLMO, LLC, No. 20 CV 1073, 2021 WL 3478174, at *3 (E.D.N.Y. Jul. 19, 2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

### 1.    Plaintiff's Standing

To establish Article III standing, a plaintiff must demonstrate three elements:  "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. at 560–61).  Standing constitutes "a threshold matter of justiciability," and when a plaintiff lacks standing, "the Court has no choice but to dismiss the plaintiff's claim for lack of subject-matter jurisdiction."  Tavarez v. Moo Organic Chocolates, LLC, 623 F. Supp. 3d 365, 370 (S.D.N.Y. 2022).  Courts may raise standing issues *sua sponte*, even when defendants default.  Gomez v. West Shore Inn Rest., Inc., No. 22 CV 277, 2023 WL 5337864, at *4 (E.D.N.Y. June 30, 2023) (holding that "courts must evaluate whether a plaintiff has standing to bring an action, even if the defendants are in default"), report and recommendation adopted, 2023 WL 5334415 (E.D.N.Y. Aug. 18, 2023).  While courts must generally accept the truth of a plaintiff's allegations on default, the plaintiff nevertheless "'bears the burden of alleging facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'"  Calcano v. Swarovski N. Am. Ltd., 36 F.4th 68, 75 (2d Cir.

2022) (quoting Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l., 790 F.3d 411, 417 (2d Cir. 2015)).

The Second Circuit has established a three-part test for standing in ADA cases:  "(1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [services] to plaintiff's home, that plaintiff intended to return to the subject location."  Kreisler v. Second Ave. Diner Corp., 731 F.3d 184, 187–88 (2d Cir. 2013) (per curiam).

a.  Past Injury

Plaintiff alleges that he visited the Subject Property on two occasions – in early November 2023 and on July 25, 2024 – and details thirty-six specific ADA violations at the Subject Property.  (Compl. ¶¶ 5, 8–9, 15).  Plaintiff alleges that these violations "constrained, hindered, and thwarted" his ability to "ambulate through the entrance of the Subject Property." (Id. ¶ 5).  These allegations are sufficient to satisfy the first prong of the standing test.  See Harty v. Spring Valley Marketplace LLC, 2017 WL 108062, at *7 (finding that the complaint met the first prong of the standing test where, as here, it included a list of alleged violations).  Moreover, a plaintiff "'need not personally encounter each ADA violation within the [property] in order to seek its removal,'" and "'once a plaintiff establishes standing with respect to one barrier in a place of public accommodation, that plaintiff may bring ADA challenges with respect to all other barriers on the premises that affect the plaintiff's particular disability.'"  Adams v. 8618-8620 Third Ave. Realty Corp., No. 22 CV 5772, 2023 WL 5279355, at *3 (E.D.N.Y. July 28, 2023) (quoting Kreisler v. Second Ave. Diner Corp., 731 F.3d at 188–89), report and recommendation

adopted, 2023 WL 5278483 (E.D.N.Y. Aug. 16, 2023).  Thus, the Court finds that plaintiff has sufficiently alleged past injury under the ADA.

### b.  Continued Discriminatory Treatment

Plaintiff also meets the second prong of the Kreisler test.  Given that the alleged barriers to access are architectural in nature (Compl. ¶¶ 15–16), it is reasonable to infer the discriminatory treatment will continue without judicial intervention.  Hashimi v. CLMO, LLC, 2021 WL 3478174, at *4 (finding that when defendants choose not to challenge allegations of ADA violations by defaulting, courts have found it "reasonable to infer that, absent a court order requiring remediation, [architectural] barriers will remain").

### c.  Intent to Return

Although plaintiff satisfies the first two prongs, the Court finds that he has failed to plausibly allege his intent to return to the Subject Property under the third prong, thereby failing to establish standing.

The third Kreisler prong, intent to return, carries particular importance, as it ensures "that the risk of harm is sufficiently imminent and substantial to establish standing."  Gannon v. Hua Da Inc., No. 23 CV 1650, 2023 WL 2664012, at *1 (S.D.N.Y. Mar. 28, 2023) (internal quotation marks and citation omitted).  Indeed, to establish standing in the ADA context, a plaintiff must demonstrate "that she is likely to be harmed again in the future in a similar way," and the "threatened injury must be certainly impending."  Wahab v. White's Boots, Inc., No. 23 CV 9018, 2024 WL 3909083, at *4 (S.D.N.Y. Aug. 16, 2024) (internal quotation omitted).  In conducting this inquiry under Kreisler, courts look to whether the plaintiff has a "plausible intention or desire to return to the [defendant's property] but for the barriers to access."  Grinblat v. Apna Food & Oil Corp., No. 19 CV 6746, 2020 WL 7481508, at *4 (E.D.N.Y. Aug. 26,

2020), report and recommendation adopted, 2020 WL 7481327 (E.D.N.Y. Dec. 18, 2020) (internal quotation marks and citation omitted).  This plausibility determination requires a "highly fact-sensitive inquiry" where no single factor is dispositive.  Id. at *3 (internal quotation marks and citation omitted).

The Second Circuit's decision in Calcano v. Swarovski North America, Ltd. "raised the bar appreciably" for establishing intent to return by requiring a more fact-intensive approach. Hennessy by and through Hennessy v. Poetica Coffee Inc., No. 21 CV 5063, 2022 WL 4095557, at *4 (E.D.N.Y. Sept. 7, 2022) (citing 36 F.4th 68).  The Court emphasized that the "central inquiry is not whether a complaint pleads the magic words that a plaintiff 'intends to return,' but if, examined under the totality of all relevant facts, the plaintiff plausibly alleges a real and immediate threat of future injury."  Calcano v. Swarovski N. Am. Ltd., 36 F.4th at 75 (internal quotation marks and citation omitted).  Under this standard, plaintiffs must allege intention to return with factual specificity, see id. at 75–76, and courts "will 'not credit a legal conclusion couched as a factual allegation or a naked assertion devoid of further factual enhancement.'" Tavarez-Vargas v. Annie's Publ'g, LLC, No. 21 CV 09862, 2023 WL 2499966, at *2 (S.D.N.Y. Mar. 14, 2023) (quoting Calcano v. Swarovski N. Am. Ltd., 36 F.4th at 75).  A plaintiff must therefore "allege specific and non-conclusory facts from which the Court can infer an intent to return, such as the dates on which she attempted to access the location . . . and the reasons why she intends to return."  Fernandez v. Katie May, LLC, No. 24 CV 1592, 2025 WL 872114, at *1 (S.D.N.Y. Mar. 20, 2025) (citing Calcano v. Swarovski N. Am. Ltd., 36 F.4th at 77).

Previously, in Kreisler, the Second Circuit found standing where the plaintiff alleged that he was a frequent customer of other diners in the neighborhood, passed by the diner three to four times per week, lived within several blocks of the diner, and intended to visit the diner if it

became accessible.  731 F.3d at 186, 188.  However, in <u>Calcano</u>, the Second Circuit clarified that a plaintiff's "conclusory invocations" of the <u>Kreisler</u> factors are "insufficient to establish standing."  <u>Calcano v. Swarovski N. Am. Ltd.</u>, 36 F.4th at 75; <u>see also</u> <u>Hennessy v. Poetica Coffee Inc.</u>, 2022 WL 4095557, at *2 (quoting the same).  Thus, after <u>Calcano</u>, plaintiffs who merely "parrot" the <u>Kreisler</u> standard by simply asserting legal conclusions rather than plausible factual allegations fail to provide sufficient factual detail necessary to establish standing.  <u>Id.</u> at 76.

The <u>Calcano</u> plaintiffs exemplify this deficiency.  Three plaintiffs failed to provide an accurate address for the defendant's business, rendering their assertions of proximity "vague" and "lacking in support."  <u>Id.</u>  The fourth plaintiff, despite providing an accurate address for the business, still did not demonstrate proximity because he alleged only that he lived in the Bronx without specifying his address, which could potentially be "up to an hour away" from the Manhattan store.  <u>Id.</u>  In addition, the plaintiffs did not demonstrate a "concrete and particularized" injury where they alleged only that they had visited defendant's property "on prior occasions" without details about frequency, purchases, or specific locations; and that they "intend[ed] to immediately purchase at least one store gift card from the Defendant as soon as the Defendant sells store gift cards that are accessible to the blind," without explaining *why* they wanted these gift cards "so urgently."  <u>Id.</u> at 75–78.

Here, to be sure, plaintiff's Complaint contains greater factual specificity than those in <u>Calcano</u>.  Plaintiff alleges that he visited the Subject Property in November 2023 and on June 25, 2024, and that he "lives only several miles" from the Subject Property and provides an exact address.  (Compl. ¶¶ 4–6).  He further claims that he passes by the property weekly while "doing errands, visiting family and friends throughout the borough, and looking to eat out."  (<u>Id.</u> ¶ 6).

13

Plaintiff alleges that he dines in the neighborhood "two to three times per month," has patronized "nearly all of the neighboring restaurants," and dines on the same street as the Subject Property "about once or twice per month, including but not limited to Golden Dragon Chinese Food, Rosa's Pizza, CTown Supermarket, and the Sushi Kitchen." (Id.)  He further alleges that he "intends to visit the subject facility in the coming summer and autumn when dining out in this neighborhood with friends and family." (Id. ¶ 9).

Despite these more detailed pleadings, however, plaintiff still narrowly fails to establish his standing.  While he alleges proximity, frequency in the area, and patronage of nearby restaurants, these allegations alone cannot establish an intent to return.  First, that plaintiff lives "several miles" from the Subject Property does not necessarily support his standing.  See Ganna v. Hau Da Inc., No. 22 CV 1650, 2023 WL 2664012, at *2 n.2 (S.D.N.Y. Mar. 28, 2023) (finding that living 1.9 miles away from defendants' property was not sufficiently close enough to support standing since "travel around [New York City] is time consuming and at times difficult – especially for disabled individuals needing additional accommodations in public transit or parking areas" (citation omitted)); compare Kreisler v. Second Ave. Diner Corp., 731 F.3d at 188 (holding that the fact that plaintiff lived "within several blocks" of the Subject Property supported his intent to return), with Calcano v. Swarovski N. Am. Ltd., 36 F.4th at 76 (finding the fact that plaintiff lived in the same borough as the instant gift shop did not support an inference that plaintiff "would immediately make [a] inter-borough trip just to purchase braille gift cards from The Art of Shaving at Columbus Circle").  Considering next plaintiff's allegations about his frequency in the area and patronage of nearby restaurants, more is still required – namely, assertions about *why* the plaintiff intends to return to defendants' particular restaurant or about his specific interest in defendants' offerings.

14

Applying Calcano's demanding standard, courts in this circuit have consistently rejected complaints for lack of standing where a plaintiff fails to make specific factual allegations demonstrating why he intends to return to a particular establishment, especially as opposed to other, similar ones.  See, e.g., Gannon v. Hau Da Inc., 2023 WL 2664012, at *2 (holding that, despite plaintiff's allegations that he had visited the property "many times," frequented the neighborhood often due to past residence and nearby friends, and intended to return "many times in the future," he lacked standing because he failed "to explain what is distinctive about Defendant's delicatessen and grocery – one of literally *thousands* on the island of Manhattan – or why he wants to visit the place so urgently that he intends to do so immediately upon the removal of the alleged barriers" (internal quotation marks and citation omitted)); Gannon v. JBJ Holdings, No. 22 CV 1674, 2022 WL 6698222, at *3 (S.D.N.Y. Oct. 11, 2022) (noting that "[t]here are many donut shops on the island," and plaintiff "does not allege what is distinctive about Defendants' donut shop," nor "why he wants to avail himself of Defendants' services 'so urgently'"); Martin v. Brooklyn Bagel & Coffee Co., Ltd., No. 24 CV 3758, 2025 WL 814754, at *3–4 (E.D.N.Y. Mar. 13, 2025) (finding that plaintiff had no intention of visiting a restaurant, and therefore accessing its website, because "plaintiff's alleged interest in eating breakfast hardly explains why he remains so interested in defendant's breakfast foods, as opposed to the thousands of other breakfast options available in New York . . . .  A plaintiff cannot simply allege that the defendant offers a general category of goods or services and that she is interested in that category of goods or services" (internal quotation marks and citation omitted)).

Courts have found standing, however, when plaintiffs articulate these sorts of specific reasons for their interest in returning to an establishment.  See, e.g., Range v. Grand Greene LLC, No. 24 CV 2500, 2025 WL 1144700, at *5 (S.D.N.Y. Apr. 17, 2025) (finding standing to

return to premises where plaintiff alleged, *inter alia*, that "he likes clothing and fashion generally," that "based on what he has seen in [defendant's] display windows and on its website, he is specifically interested in [defendant's] clothing and style," and that he "intends to patronize the [defendant's] premises one or more times a year after it becomes fully accessible"); Volfman v. Miss Du's Tea Shop Inc., No. 24 CV 2973, 2025 WL 1621628, at *3 (S.D.N.Y. June 9, 2025) (finding standing to return to a physical establishment where plaintiff alleged that "positive online reviews have inspired in [him] an ongoing interest in patronizing" defendants' establishment, identified "a specific product that [he] is interested in purchasing," and claimed that this product is a distinctive product not widely available in other bubble tea shops); Dawkins v. Brandy Library Lounge, LLC, No. 23 CV 207, 2023 WL 8455896, at *2, *5 (E.D.N.Y. Dec. 6, 2023) (finding standing where a plaintiff, "identified the particular aspects of the restaurant that piqued his interest," such as its "European atmosphere and setting, fine wine and spirits, as well as the cuisine offerings," and "explained his specific desire to bring his girlfriend to the restaurant on a date" because he "thought [it] was the best place to impress [her]"); Davis v. Wild Friends Foods, Inc., No. 22 CV 4244, 2023 WL 4364465, at *6 (S.D.N.Y. July 5, 2023) (finding standing where plaintiff alleged how defendant's organic honey sunflower butter was a distinctive product, and "that he enjoys honeyed butter, is generally interested in organic food as part of his diet, and was interested in trying a new brand to enjoy a healthy and tasty new food").

Here, plaintiff does not allege specific reasons he intends to return to this particular restaurant; he does not even mention what sort of food the restaurant serves. Plaintiff only states simply that he "intends to visit the subject facility in the coming summer and autumn when dining out in this neighborhood with friends and family." (Compl. ¶ 9). This is precisely the sort of "legal conclusion couched as a factual allegation" that Calcano found insufficient.

Calcano v. Swarovski N. Am. Ltd., 36 F.4th at 75.  Without more, courts in this circuit have rejected similar statements of intent.  See, e.g., Hennessy v. Poetica Coffee Inc., 2022 WL 4095557, at *3–4 (finding plaintiff has no standing where he alleges only that he "intends to patronize" defendants' business "several times a year after it becomes fully accessible").  While someone may frequent an area and eat at nearby restaurants, they may have no intention of returning to a particular establishment which they had previously entered.  Establishing standing is plaintiff's burden, see Calcano v. Swarovski N. Am. Ltd., 36 F.4th at 75, and the Court cannot assess whether plaintiff's stated intent to return is plausible without further factual allegations.

If plaintiff genuinely intends to return to the defendants' establishment, "this would not [be] a hard problem to fix," nor does it create an insurmountable hurdle for legitimate ADA claims.  Winegard v. Golftec Intell. Prop. LLC, 674 F. Supp. 3d 21, 25 (E.D.N.Y. 2023).  Plaintiff may "nudge [his] claims across the line from conceivable to plausible" by discussing non-conclusory, specific facts that show he plausibly intends to return to and dine at defendants' restaurant in particular.  Calcano v. Swarovski N. Am. Ltd., 36 F.4th at 76; see also, e.g., Dawkins v. Brandy Library Lounge, LLC, 2023 WL 8455896, at *5; Range v. Grand Greene LLC, 2025 WL 1144700, at *5.

An additional factor considered by the courts in evaluating the plausibility of a plaintiff's claims of injury is whether and to what extent the plaintiff files similar ADA claims.  See Hennessy v. Poetica Coffee Inc., 2022 WL 4095557, at *3 (noting that plaintiff had filed seventy-nine other ADA actions in the district within a year); Winegard v. Golftec Intell. Prop. LLC, 674 F. Supp. 3d at 26 (noting that the fact plaintiff is a "serial filer" of ADA claims "bears on the plausibility of his standing claim"); Gannon v. Hua Da Inc., 2023 WL 2664012, at *2 (emphasizing that the "broader context" of plaintiff's "transparent cut-and-paste and fill-in-the-

blank pleadings" in twenty-six ADA cases filed over the course of two months weighs on the court's decision (internal quotation marks omitted)); Gomez v. West Shore Inn Rest., Inc., 2023 WL 5337864, at *7 (noting that plaintiff filed at least two nearly identical ADA cases in the jurisdiction).

In just the last two calendar years alone, plaintiff Adams has filed sixteen complaints in both the Eastern and Southern Districts of New York that are nearly identical.[4]  Each contains essentially the same allegations:  that plaintiff lives within "several" (or a specific number) of miles from the restaurant, that he passes by the restaurant once a week, that he dines in the neighborhood some number between one and three times per month, that he has dined at nearly all the nearby restaurants (then a list of restaurant names is inserted), and that he eats on the same street some number between one and two times per month.  Finally, each complaint alleges simply that plaintiff intends to return to and dine at the establishment.  None of these complaints contain any details specific to the restaurant, save for the list of alleged ADA violations and the list of nearby restaurants.  The boilerplate nature of plaintiff's Complaint is further underscored by the conduct of his attorney, Maria Barducci, who, as courts have noted, has filed "nearly 300 ADA complaints" in this district that are "'extremely similar'" and use "'boiler plate language.'" Rouse v. Broadway & Cooper LLC, No. 23 CV 7849, 2025 WL 1249605, at *2 (E.D.N.Y. Apr. 30, 2025) (quoting Hashimi v. Conandy Realty LLC, No. 23 CV 2300, 2025 WL 914697, at *3 (E.D.N.Y. Mar. 26, 2025)).  This fact further undermines the plausibility of plaintiff's intent to return by transforming his claims into "mere boilerplate."  Wahab v. White's Boots Inc., 2024

---

[4] See, e.g., Adams v. Hancock Management LLC, 25 CV 2089, ECF No. 1 (E.D.N.Y. 2025); Adams v. Yee Har Ng, 25 CV 578, ECF No. 1 (E.D.N.Y. 2025); Adams v. Wyckoff Avenue Holdings LLC, 24 CV 1692, ECF No. 1 (E.D.N.Y. 2024); Adams v. Sol de Quito Restaurant I Inc., 23 CV 2227, ECF No. 1 (E.D.N.Y. 2023); Adams v. Gmart NY 2022 LLC, 24 CV 7982, ECF No. 1 (S.D.N.Y. 2024); Adams v. Eight Cooper Equities LLC, 24 CV 3614, ECF No. 1 (S.D.N.Y. 2024).  For a complete list of cases filed by plaintiff, see infra n.5–15.

WL 3909083, at *8 (finding that plaintiff lacked standing in part because the complaint was nearly identical to others filed by his attorney).

The Second Circuit indicated that it strongly disfavors these "Mad-Libs-style complaints" because they suggest these allegations are the result of a "mass production" of implausible claims. Calcano v. Swarovski N. Am. Ltd., 36 F.4th at 77. Certainly, this "fact alone . . . does not make Plaintiff's allegations of standing any more or less plausible," Davis v. Wild Friends Foods Inc., 2023 WL 4364465, at *4, and "[t]he law is clear that testers can have standing." Harty v. West Point Realty, Inc., 28 F.4th 435, 444 n.3 (2d Cir. 2022). Nonetheless, "even testers have to show that they have suffered an Article III injury in fact." Id. Accordingly, while plaintiff's status as a serial filer is not dispositive, the cut-and-paste nature of plaintiff's claims lends further skepticism as to plaintiff's intent to return to defendants' restaurant in particular. Across his many complaints, including this one, plaintiff alleges that, each week or biweekly, he passes by at least sixteen different restaurants spread across a wide swath of New York City neighborhoods, including Midtown Manhattan,[5] Hell's Kitchen,[6] Chelsea,[7] the East Village,[8] Chinatown,[9] Park Slope,[10] Windsor Terrace,[11] Sunset Park,[12] Bedford-Stuyvesant,[13]

---

[5] Adams v. 127 West 56th Street LLC, 23 CV 2488, ECF No. 2 ¶ 6 (S.D.N.Y. 2023).

[6] Adams v. Shea Realty, INC., 23 CV 2454, ECF No. 1 ¶ 7 (S.D.N.Y. 2023) (This is the only complaint in which plaintiff alleges that, instead of passing by the Subject Property weekly, he alleges that he passes by twice per month).

[7] Adams v. Gmart NY 2022 LLC, 24 CV 7982, ECF No. 1 ¶ 7 (S.D.N.Y. 2024).

[8] Adams v. Eight Cooper Equities LLC, 24 CV 3614, ECF No. 1 ¶ 6 (S.D.N.Y. 2024).

[9] Adams v. 82 Bayard Company, Inc., 24 CV 2045, ECF No. 1 ¶ 6 (S.D.N.Y. 2024).

[10] Adams v. North Slope 341 Corp., 25 CV 989, ECF No. 1 ¶ 7 (E.D.N.Y. 2025).

[11] Adams v. 227 PPW LLC, 24 CV 2889, ECF No. 1 ¶ 6 (E.D.N.Y. 2024); Adams v. Rest Easy LLC, 24 CV 2736, ECF No. 1 ¶ 6 (E.D.N.Y. 2024).

[12] Adams v. Yee Har Ng, 25 CV 578, ECF No. 1 ¶ 7 (E.D.N.Y. 2025); Adams v. 881 5th Ave LLC, 23 CV 2271, ECF No. 1 ¶ 6 (E.D.N.Y. 2023).

[13] Adams v. 434 Hancock Management LLC, 25 CV 2089, ECF No. 1 ¶ 7 (E.D.N.Y. 2025).

Williamsburg,[14] and Bushwick,[15] despite requiring a wheelchair to ambulate.  As one court observed, plaintiff "undermines his own standing claims" by asserting "an immediate intent to return to disparate and seemingly unremarkable establishments" all across Manhattan and Brooklyn.  Gannon v. Yan Ping Assoc., Inc., No. 22 CV 1675, 2023 WL 6292533, at *3 (S.D.N.Y. Sept. 22, 2023), report and recommendation adopted, 2023 WL 6611040 (S.D.N.Y. Oct. 7, 2023).  Therefore, the Court finds that plaintiff fails to meet Kreisler's third prong and consequently lacks standing.[16]

Alternatively, plaintiff argues that a more lenient standard than the one set forth in Calcano should apply.  Specifically, plaintiff relies on the Supreme Court's recent decision in 303 Creative v. Elenis, 600 U.S. 570 (2023), arguing that it requires him to plead only a "credible threat of discrimination in the future," rather than a real and immediate threat of future injury, to establish standing for prospective injunctive relief.  (Pl.'s Mem. at 6).  At least two cases in this district have suggested that 303 Creative v. Elenis may support a relaxed standing inquiry in Title III ADA cases seeking injunctive relief.  See Cruz v. Wide Open Arts, LLC, No. 23 CV 103, 2023 WL 11845609, at *2 n.2, *3 (E.D.N.Y. Aug. 14, 2023) (suggesting that Calcano may no longer govern after 303 Creative and finding standing where plaintiff demonstrated "a credible threat of future discrimination against her"), report and recommendation adopted, No. 23 CV 103, Electronic Order (E.D.N.Y. Sept. 26, 2023); Florez v.

---

[14] Adams v. 171-173 Realty LLC, 24 CV 7366, ECF No. 1 ¶ 7 (E.D.N.Y. 2024); Adams v. Paula Nicole, Inc., 24 CV 1694, ECF No. 1 ¶ 6, ECF. No 17-1 ¶ 6 (E.D.N.Y. 2024); Compl. ¶ 6.

[15] Adams v. Wyckoff Avenue Holdings LLC, 24 CV 1692, ECF No. 1 ¶ 6 (E.D.N.Y. 2024); Adams v. Sol de Quito Restaurant I Inc., 23 CV 2227, ECF No. 1 ¶ 6 (E.D.N.Y. 2023).

[16] The Court does not foreclose the possibility that similar allegations, proffered by a different plaintiff or in a different factual setting, might plausibly allege standing.  As the Second Circuit has emphasized, the task of assessing standing is one rooted in "judicial experience and common sense."  Calcano v. Swarovski N. Am. Ltd., 36 F.4th at 75.  Courts must consider the "broader context" in which a plaintiff's allegations arise.  Id. at 77.  Here, considering the totality of the circumstances, the Court concludes that plaintiff has not plausibly alleged standing. This result reflects the particular context and deficiencies of plaintiff's case, not an unduly high bar for future litigants pursuing legitimate claims.

L & C Brand Realty Inc., No. 24 CV 543, 2024 WL 3992720, at *2 n.1, *3 (E.D.N.Y. July 29, 2024) (same), report and recommendation adopted, 2024 WL 3986642 (E.D.N.Y. Aug. 29, 2024).

Having evaluated plaintiff's arguments, this Court respectfully recommends applying the Calcano standard. First, plaintiff's proffered standard from 303 Creative v. Elenis – that standing can be satisfied by showing "credible threat *of discrimination in the future*" (see Pl.'s Mem. at 6) (emphasis added) – does not appear anywhere in the Court's opinion. Second, and more importantly, 303 Creative v. Elenis presented distinct factual and legal considerations to those at issue here. The case involved a pre-enforcement challenge to the Colorado Anti-Discrimination Act, where the plaintiff alleged an intention to refuse to create certain wedding-related content depicting marriage between same-sex couples, and claimed that doing so would subject her to potential enforcement actions by the state. 600 U.S. at 580–82. While standing was not an issue on appeal, the Supreme Court briefly noted that she had standing based on a narrow line of cases holding that, when a plaintiff intends to engage in conduct prohibited by statute and the alleged future harm involves criminal or regulatory penalties, Article III standing may be satisfied by showing a "credible threat" of prosecution for the intended conduct. See id. at 580 (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014) (permitting standing to be established where plaintiffs allege a "credible threat of prosecution")).

Here, plaintiff does not allege an intent to violate any law, nor does he claim that his future conduct could subject him to enforcement actions or prosecution by the government. Accordingly, plaintiff's claims fall outside of the pre-enforcement context recognized in 303 Creative v. Elenis, and this Court therefore finds that the "credible threat" standard from that line of cases does not apply. Indeed, even after 303 Creative v. Elenis, the Second Circuit continues

to apply the higher "certainly impending" standard in non-pre-enforcement contexts, including ADA suits.  See Lugo v. City of Troy, New York, 114 F.4th 80, 86 (2d Cir. 2024) (quoting Calcano's mandate that "threatened injury must be *certainly impending*" to establish standing for ADA claims).  Moreover, as demonstrated above, district courts in this circuit almost universally continue to apply Calcano's instruction that plaintiffs must demonstrate "a real and immediate threat of future injury."  36 F.4th at 75.  See, e.g., Volfman v. Miss Du's Tea Shop Inc., 2025 WL 1621628, at *3; Black v. 3 Times 90, Inc., No. 23 CV 6235, 2025 WL 1114610, at *3 (E.D.N.Y. April 15, 2025); Range v. Grand Greene LLC, 2025 WL 1144700, at *4.  This Court finds no reason to depart from this well-established precedent.

Having reviewed plaintiff's allegations, the Court finds that plaintiff has not plausibly alleged an intent to return, particularly when considered in light of his broader litigation history, and given the absence of specific, non-conclusory factual pleadings explaining why he intends to do so.  Accordingly, the Court respectfully recommends that plaintiff's motion for default judgment be denied without prejudice to renew to correct the deficiencies in his allegations as to standing.

CONCLUSION

Accordingly, the Court respectfully recommends that:  (1) plaintiff's motion for default judgment be denied without prejudice; and (2) plaintiff be given 30 days from the date of any Order adopting this Report and Recommendation to file an amended complaint.  The Court further recommends that if plaintiff fails to file an amended complaint within the time allowed, or fails to cure the deficiencies identified in this Report and Recommendation, that the action be dismissed without prejudice.

Plaintiff is Ordered to serve this Report and Recommendation on defendants and file proof of service on the docket by July 14, 2025.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated:  Brooklyn, New York
July 9, 2025

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York